( JL JLOS —
FILED IN DISTRICT COURT
OKLAHOMA COUNTY
Andrews

**IN THE DISTRICT COURT OF OKLAHOMA COUNTY** MAY **1 3** 2021
**STATE OF OKLAHOMA**

RICK WARREN
COURT CLERK

124 _____

| | |
|---|---|
| **FOREMAN ELECTRIC SERVICES, INC.** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| **v.** | ) |
| | ) |
| **MAMMOTH ENERGY SERVICES, INC.** | ) |
| **and COBRA ACQUISITIONS LLC,** | ) |
| | ) |
| **Defendants.** | ) |

Case No. **CJ-2021 ˙2103** '
Judge:

**ATTORNEY LIEN CLAIMED**
**JURY TRIAL DEMANDED**

## PETITION

Plaintiff Foreman Electric Services, Inc. ("Foreman") for its causes of action against

Defendants Mammoth Energy Services, Inc. ("Mammoth") and Cobra Acquisitions LLC

("Cobra") (collectively "Defendants"), alleges and states as follows:

### PARTIES; JURISDICTION AND VENUE

1.      Plaintiff Foreman is a Puerto Rico corporation with its principal place of

business in Odessa, Ector County, Texas.

2.      Defendant Mammoth is a Delaware corporation qualified to do business in

Oklahoma with its principal place of business in Oklahoma City, Oklahoma County,

Oklahoma.

3.      Defendant Cobra, a wholly owned subsidiary of Mammoth, is a Delaware

limited liability company qualified to do business in Oklahoma with its principal place of

business in Oklahoma City, Oklahoma County, Oklahoma.

4.      The facts and circumstances giving rise to the causes of action asserted herein,

at a minimum, occurred in Oklahoma and Puerto Rico.

**EXHIBIT**
**1**

5.      The Court possesses jurisdiction over the subject matter hereof and all parties named herein; venue is proper in this Court.

## FACTUAL BACKGROUND

6.      Foreman is a turnkey contractor with three strategic locations in San Juan, Puerto Rico, Odessa, Texas, and Austin, Texas that provides a large multitude of logistical and electrical services to the construction, oil and gas, and utility industries.

7.      Foreman has had more than 250,000 man-hours of experience in power restoration, repair, and construction in Puerto Rico since October 2017.

8.      Mammoth is primarily an oil and gas company that entered the energy infrastructure business in the second quarter of 2017, when it formed Cobra as a wholly owned subsidiary.

PREPA's Requests for Proposals in the Aftermath of Hurricane Maria

9.      On or about September 20, 2017, Hurricane Maria made landfall in Puerto Rico as a Category 4 storm destroying the electric grid of the island.

10.     In February 2018, the Puerto Rico Electric Power Authority ("PREPA") issued a request for proposals for contracts to perform electric restoration work in Puerto Rico funded by the Federal Emergency Management Administration ("FEMA").

11.     PREPA issued a request for proposal to procure services of one or more contractors "for the immediate restoration of the PREPA system" ("RFP 77844").

12.     RFP 77844 specified that the contractor "shall" acquire certain "required resources," including, but not limited to the following:

       a.      100 Transmission Linemen;
       b.      200 Distribution Linemen;

2

      c.     20 Civil workers, Damage assessors, heavy equipment operators, 20 logistics, safety and others (with a minimum of sixty percent of the workforce being sourced from the contractor's own workforce);
      d.     Transmission Digger Trucks;
      e.     Distribution Digger Trucks;
      f.     Auger Trucks;
      g.     Distribution Bucket Trucks;
      h.     Transmission Bucket Trucks;
      i.     Pick ups;
      j.     Dozer, semi tractors;
      k.     60 and 30 Ton Cranes; and
      l.     Semi Tractors and haul *See* RFP, Appendix A – Technical Specifications, at 1.1 "Scope of Phase 2 and Phase 3 Restoration".

13.    RFP 77844 was intended to be competitively bid, identified minimum qualifications for all applicants, and set a March 2, 2018 deadline for submissions.

14.    Among other things, all applicants were required to have successfully completed "at least one (1) of each type of similar project in the last three years . . . ending December 31, 2017[,]" and to provide references, including references from utility companies, speaking to that experience.

15.    The three project types included in RFP 77844, each of which was defined in detail, included the following: (1) transmission line projects; (2) distribution line projects; and (3) substation or switchyard projects.

16.    RFP 77844 was intended to provide PREPA with one year of contractor service.

17.    RFP 77844 also set forth "grading criteria" for all applicants, breaking down the weight to be attributed to each factor in assessing applicant bids. "Quantitative factors," such as pricing competitiveness, discount proposals, schedule and method descriptions, and mobilization capacity were weighted at 65 percent; while "qualitative factors," such as

background and financial information (including audited financial statements for 2015 and 2016), company reputation, and previous experience were weighted at 35 percent.

18.     Foreman submitted a 63-page proposal, in which it specified that it would provide over 550 linemen and support personnel and over 350 pieces of necessary equipment.

19.     In Section 5.3, "Account Management," Foreman provided a detailed mobilization and demobilization plan, which included PREPA paying for both.

20.     As Foreman noted in its proposal, "Foreman Electric has transmission equipment in Jacksonville, FL at the port. Foreman Electric has over $5 million dollars worth of specialty power line tools in Puerto Rico, ready to work. Foreman Electric has over 400 line workers, experienced on PREPA's system, awaiting notice for re-deployment. In short, upon execution of a contract with PREPA, Foreman Electric has the ability to proceed within 48 hours."

21.     In response to RFP 77844, PREPA awarded Master Service Agreements to three companies: Cobra, Foreman, and MasTec Renewables Puerto Rico LLC ("MasTec").

22.     Foreman was selected for the contract with PREPA on or about March 29, 2018.

23.     Of the three companies that were awarded the RFP 77844 for the restoration of the electrical grid after the passing of Hurricane María, PREPA formalized the contracts with Cobra and MasTec on or before March 2018.

24.     Despite Foreman and PREPA's execution of the Master Service Agreement on January 29, 2019 (the "Foreman MSA"), Foreman did not receive a Notice to Proceed.

25.     Unlike Foreman, neither Mammoth nor Cobra had a history of experience with large scale electric infrastructure restoration, disaster cleanup, or emergency response.

26.     Inexplicably, Cobra was selected over Foreman—a well-respected provider of electrical, powerline, and storm restoration services with more than sixty years of relevant experience—to perform over $1.1 billion in total in emergency electrical work funded by FEMA in the aftermath of the storm.

27.     With Mammoth's assistance, the newly formed Cobra was awarded two contracts to help restore power to Puerto Rico and rebuild its electrical grid: a $200 million Emergency Master Service Agreement in October 2017 and a second, $900 million contract in response to PREPA's RFP 77844.

28.     The $200 million Emergency Master Service Agreement was amended five times to increase the contract's value to $945 million, resulting in a total award of over $1.8 billion in emergency electrical work funded by FEMA.

29.     When *Mammoth* issued a statement regarding the work performed in Puerto Rico on June 7, 2019, it characterized its role in the restoration project as follows: "Following Hurricane Maria in Puerto Rico and its complete destruction of the island's power grid, *Mammoth, through its wholly owned subsidiary Cobra,* made a proposal to do reconstruction work to help restore power and rebuild Puerto Rico's grid." (emphasis added).

30.     The Foreman MSA required Foreman to provide "labor, supervision, tools, equipment, and materials necessary to perform the hurricane restoration and reconstruction services at various locations in PREPA's services areas."

31.     The value of the Foreman MSA was not to exceed $250,000,000.00 and, originally, was in effect from January 29, 2019 through June 30, 2019.

32.     Accordingly, Foreman initiated a massive mobilization effort, incurring millions of dollars of costs, to position its contractually obligated resources consistent with the bid award and the Foreman MSA.

33.     However, power was not fully restored to Puerto Rico's electrical grid until April 2019, despite FEMA's allocation of hundreds of millions of dollars to emergency restoration efforts.

34.     The restoration of power to Puerto Rico was delayed, at least in part, because Ahsha Tribble ("Tribble"), the FEMA administrator responsible for assigning restoration and repair projects on the island, accepted bribes from then Cobra President Donald Keith Ellison ("Ellison") to direct electrical grid restoration work in Puerto Rico to Cobra at the exclusion of Foreman.

Federal Prosecution Exposes Secret Bribery Scheme September 3, 2015

35.     Many of the factual allegations raised in this Petition arise out of information first unveiled in the course of the criminal proceedings in the United States District Court, District of Puerto Rico, Criminal Case No. 19-00541-FAB, *United States v. Ahsha Nateef Tribble, Donald Keith Ellison, and Jovanda R. Patterson* (the "Federal Prosecution").

36.     On September 3, 2019, a Grand Jury returned an Indictment in the Federal Prosecution. Among other violations, the Indictment alleged Ellison and Tribble conspired to commit bribery in violation of 18 USC § 201 and participated in wire fraud in violation of 18 USC § 1343 in relation to Cobra's contracts with PREPA, including RFP 77844.

37.     The Indictment also alleges that former FEMA official/Cobra's employee Jovanda R. Patterson ("Patterson") negotiated employment with Cobra and its affiliates from

6

March to July 2018 while participating as a FEMA employee in a Past Performance Evaluation for Cobra Logistics LLC as a part of a vendor bid process.

38.   On or about June 1, 2018, Patterson received a job offer from Cobra Logistics LLC at an annual salary of $160,000.00, with a bonus of up to 30% of her salary, plus per diem—more than double her FEMA salary.

39.   Patterson pled guilty to committing acts affecting personal financial conflicts of interest in violation of 18 U.S.C. § 208.

40.   The Indictment revealed for the first time the secret bribery scheme among the Defendants and others to enrich themselves and their co-conspirators through Ellison giving things of value to Tribble who in return "performed official acts through her FEMA employment to advance Cobra's interests and secure favorable treatment for Cobra as needed and as specific opportunities arose in connection with the contracts signed between PREPA and Cobra, the payment of work billed under the contracts, and work assigned by PREPA to Cobra pursuant to those contracts."

41.   The Indictment further alleges that Tribble, in exchange for receiving things of value from Ellison, "performed official acts as needed and as specific opportunities arose on behalf of Cobra, including but not limited to, influencing, providing advice to, and exerting pressure on PREPA executives, including but not limited to the Chief Executive Officer, and Directors of different PREPA divisions, so that PREPA would accelerate payments to Cobra, assign tasks to Cobra instead of PREPA employees, and use Cobra in restoration tasks to the exclusion of other contractors."

7

42.     Ellison bribed Tribble in order to induce her to abuse her position to steer hundreds of millions of dollars in profits to Defendants, to the detriment of and in prejudice to Foreman's contractual rights with PREPA, by providing Tribble the following:

a.      A helicopter tour over Puerto Rico on or about February 7, 2018;

b.      Assistance procuring a place to live in New York in or about February 2018;

c.      The negotiation and hiring of Patterson by Cobra Energy starting in or about March 2018 and culminating in July 2018;

d.      Hotel accommodations in Fort Lauderdale, Florida on or about July 17 to July 18, 2018;

e.      Airfare from Miami to Orlando for travel on or about July 20, 2018;

f.      First class airfare from San Juan to New York for travel on or about September 22, 2018;

g.      Personal security services in or about November to December 2018;

h.      Roundtrip airfare from Washington DC to Charlotte for travel on or about November 29, 2018 to November 30, 2018;

i.      Hotel accommodations in Charlotte on or about November 29-30, 2018;

j.      Access to and use of Ellison's credit card; and

k.      Access to and use of an apartment located in San Juan, Puerto Rico.

43.     Ellison concealed Defendants' bribery scheme by paying Tribble with credit cards in the name of Donald Keith Ellison in his capacity as Cobra President and executed the scheme by transmitting wire communications in interstate commerce using his email address with the email domain mammothenergy.com.

44.     Due to the unlawful conduct set forth herein by Defendants, Foreman never received a Notice to Proceed and consequently received no work arising from its $250 million Master Service Agreement.

45.     As a result of Defendants' bribery scheme, Defendants have to date received over $1.1 billion in FEMA payments, which were procured by fraud, to the detriment of Foreman.

46.     The corrupt relationship between Tribble, Mammoth, and Cobra caused Foreman to forego other opportunities and incur millions of dollars in mobilizations costs to meet its obligations under the Foreman MSA.

47.     The Indictment is attached hereto as Exhibit 1 and is incorporated by reference herein.

Vicarious/Joint and Several Liability

47.     Cobra is a wholly owned subsidiary of Mammoth and its financial information is included within Mammoth's consolidated financial statements.

48.     Mammoth's 2019 financials reflect receivables from PREPA.

49.     Mammoth CFO Mark Layton, on at least one occasion in March 2019, traveled to Puerto Rico on behalf of Mammoth to collect funds purportedly owed by PREPA.

50.     In a January 19, 2017 Mammoth press release, Arty Straehla, Mammoth's CEO, stated the following:

> *We are honored to be chosen to help restore the electric utility infrastructure for the residents of Puerto Rico. After witnessing the destruction from Hurricane Maria first hand last weekend, where 85% of Puerto Rico's residents are currently living without electricity, we intend to work quickly both to help rebuild the electric grid and to help restore normalcy to people's lives.*

The release further announced that Cobra's contract "will be incremental to Mammoth's existing energy service operations."

51.     An October 29, 2017 news article reported that, when reached by phone for comment,

9

*Ellison defended his company's contract while noting that he could only speak in a personal, unofficial capacity. "We felt we had a really good package put together that would provide for the community without taking needed resources away from the island," he said, characterizing his company's relationship with PREPA as a "standard bidding process for a storm contract." Ellison deferred official comment on specific contractual language to Mammoth representatives.*

The article goes on, quoting Mammoth CEO Arty Straehla:

*"The contract is with PREPA," he said, but "in the room every step of the way was FEMA, so that it does comply with FEMA reimbursement requirements; so quite honestly, we wouldn't have entered this contract if we didn't think we'd get paid. We feel very, very strongly about that." Asked if the company faced any risk from milestones to meet or other contract terms, Straehla was unequivocal. "No," he said. "Certainly you spend a lot of time on the upfront contract, some all-night drafting sessions and that type of thing . . . but we wanted to make sure that we got paid."*

51.     At all relevant times, and as applicable to all preceding allegations, Mammoth, Cobra, and Ellison acted as principal and as agent for each other in doing the acts alleged herein.

52.     In addition, or further in the alternative, Mammoth, Cobra, and Ellison were engaged in a joint venture or joint enterprise in doing the acts alleged herein.

53.     Mammoth is thus vicariously and/or jointly and severally liable for the acts or omissions of Cobra and Ellison, and especially inasmuch as a joint venture or joint enterprise existed, vice versa.

## FIRST CAUSE OF ACTION
### (Civil RICO – 18 USC § 1962(c) and (d))

54.     Foreman restates and realleges paragraphs 1 through 53 as if fully set forth herein.

55.     For the purpose of Foreman's Civil RICO claim, Foreman is a person within the meaning of 18 USC § 1961(3).

56.     At all relevant times hereto, Foreman was a person injured in its business or property by reason of the violations of RICO within the meaning of 18 USC § 1964(c).

57.     Both Mammoth and Cobra are persons within the meaning of 18 USC §1961(3), and are considered members, associates, and participants in the Mammoth Enterprise.

58.     Defendants and Ellison conspired to and operated as an association-in-fact enterprise within the meaning of 18 U.S.C. § 1961(4) (the "Mammoth Enterprise" or "Enterprise"), for the purpose of exchanging bribes and other consideration and promises in return for the award of PREPA contracts, to the exclusion and detriment of Foreman and other non-conspiring contractors.

59.     Defendants along with others engaged in conduct as members or associates of the Mammoth Enterprise.

60.     The conduct of Defendants constitutes a pattern of racketeering activity within the meaning of 18 USC § 1961(5) in violation of 18 USC § 1962(c).

61.     The acts of racketeering were related to each other by virtue of a common group of participants, a common group of victims: Foreman, the United States, Puerto Rico, and other contractors who did not participate in the scheme, and with the common purpose and result of causing PREPA to assign restoration tasks to Cobra to the exclusion of other contractors, including Foreman, and enriching Defendants through illegal profits and revenue.

62.     Defendants agreed to conduct and participate, directly and indirectly, in the conduct of the affairs of the Enterprise through a pattern of racketeering activity in violation of 18 USC § 1962(d).

11

63.     Defendants committed and caused to be committed the acts set forth herein in furtherance of the scheme and conspiracy.

64.     As alleged in the Indictment, the racketeering activity engaged included but is not limited to conspiring to commit bribery by giving things of value to Tribble "to influence her performance of official acts as a FEMA employee, particularly as Deputy Regional Administrator, Secor Lead, and Recovery Manager, in connection to Cobra's contracts with PREPA related to electric power grid restoration after Hurricane Maria."

65.     This scheme provided the Defendants with illegal revenue and profits derived from these activities, as detailed above.

66.     The predicate acts involved herein include conspiracy to commit bribery and wire fraud.

67.     This pattern of activity and the conspiracy to commit same focused on PREPA awarding Cobra contracts which then excluded other contractors like Foreman from receiving work from PREPA contracts.

68.     Defendants' conduct as alleged herein was the actual and proximate cause of injury to the business and property of Foreman.

69.     Based upon reasonable inferences from the allegations as set forth in the Indictment, the Mammoth Enterprise associated together in an ongoing organization for the common purpose of financially enriching themselves and their friends and associates.

70.     The Mammoth Enterprise and its members engaged in, and its affairs substantially affected and involved, interstate commerce as more fully set forth above, and, as a result of its members and their agents procuring contracts with PREPA and using interstate wires to transmit communications.

12

71.     The Mammoth Enterprise was conducted through an overall pattern of misconduct, racketeering activity, and fraudulent concealment, which encompassed and weaved its way through a number of PREPA contracts.

72.     During the relevant time period, Ellison was authorized to act and did act for the benefit of his Mammoth and Cobra in furtherance of the Mammoth Enterprise.

73.     During the relevant time period, the Defendants that were part of the Mammoth Enterprise knowingly accepted and received the benefits from their acts.

74.     As alleged in the Indictment, Defendants committed the following violations, among others, in the course of their participation in the Mammoth Enterprise:

        a.      Conspired to and participated in bribery of a public official in violation of 18 USC § 201, and

        b.      Participated in wire fraud in violation of 18 USC § 1343.

74.     Defendants have engaged in a pattern of racketeering activity as defined in 18 USC § 1961(5), committing or conspiring to commit at least two acts of racketeering activity described herein, within a period of 10 years.

75.     Defendants engaged in the above-described schemes knowingly and with the intent to funnel contracts to Cobra, monopolizing and restraining competition for PREPA contracts and thereby enriching themselves by hundreds of millions of dollars at the expense of competing contractors such as Foreman.

76.     Defendants' conspiracy and actions in furtherance of the conspiracy violated 18 USC § 1962(c) and (d) and thereby directly, legally, and proximately caused damage to Foreman's business and property in an amount greater than $75,000.00.

77.     Pursuant to 18 USC § 1964(c), Foreman is entitled to recover treble damages, attorney fees, and costs.

78.     Foreman is entitled to an award of punitive damages by way of punishment and example as provided by Okla. Stat. tit. 23, § 9.1 because Defendants acted maliciously with an intent to cause significant injury to Foreman's business.

**SECOND CAUSE OF ACTION**
**(Tortious Interference with Existing and Prospective Contractual Relations)**

79.     Foreman restates and realleges paragraphs 1 through 78 as if fully set forth herein.

80.     Foreman and PREPA executed the Foreman MSA on January 29, 2019.

81.     The Foreman MSA is a valid contract.

82.     After entering into the Foreman MSA with PREPA, Foreman expected that PREPA would assign it additional work in the future in excess of the $250 million value of the Foreman MSA.

83.     At all relevant times hereto, Defendants had knowledge of the Foreman MSA and Foreman's expectance of future business relationships with PREPA.

84.     Defendants willfully and maliciously interfered with the Foreman MSA and induced PREPA not to enter into the prospective relations with Foreman by giving things of value to Tribble in exchange for inside information and valuable work assignments from PREPA, and by causing PREPA to funnel restoration tasks to Defendants and to the exclusion of Foreman.

85.     The above actions were carried out in furtherance of an unlawful scheme by Defendants to intentionally deprive Foreman of its contractually-acquired rights and expected future business relationship with PREPA.

86.     Defendants knew their actions were not justified, privileged, or excusable but nevertheless undertook such actions in order to advance their own interests at the expense of Foreman by causing PREPA to use Cobra for the electrical grid restoration work and exclude Foreman.

14

87.     As a direct and proximate result of Defendants' actions, Foreman lost work and compensation to which it was entitled under the Foreman MSA and expected future business relationship with PREPA, causing significant economic harm to Foreman for which Foreman is entitled to be compensated.

88.     Foreman has sustained actual damages in an amount greater than $75,000.00 as a direct result of the above acts.

89.     Foreman is entitled to an award of punitive damages by way of punishment and example as provided by Okla. Stat. tit. 23, § 9.1 because Defendants acted maliciously with an intent to cause significant injury to Foreman's business.

**THIRD CAUSE OF ACTION**
**(Conversion/Thing in Action)**

90.     Foreman restates and realleges paragraphs 1 through 89 as if fully set forth herein.

91.     Defendants, by giving things of value to Tribble in exchange for inside information and valuable work assignments from FEMA, and by causing PREPA to funnel related restoration and reconstruction work to Defendants, has engaged in acts of dominion or control over funds for restoration and reconstruction work in denial of or inconsistent with the rights that Foreman has in such funds.

92.     Pursuant to Okla. Stat. tit. 60, § 312 pertaining to "thing in action," Foreman is entitled to recover money or other personal property by judicial proceedings.

93.     This conversion of funds/thing-in-action related conduct has caused, proximately or otherwise, damages to Foreman in an amount greater than $75,000.00.

94.     In addition to actual damages, Foreman is entitled to an award of punitive damages by way of punishment and example as provided by Okla. Stat. tit. 23, § 9.1 because

Defendants acted maliciously with an intent to cause significant injury to Foreman's business.

### THIRD CAUSE OF ACTION
### (Civil Conspiracy)

95.     Foreman restates and realleges paragraphs 1 through 94 as if fully set forth herein.

96.     Defendants entered into an illicit agreement and conspiracy to, *inter alia*, tortiously interfere with the Foreman MSA and divert funds from Foreman by giving things of value to Tribble in exchange for inside information and valuable work assignments from FEMA, and to cause PREPA to funnel related restoration and reconstruction work to Defendants to the exclusion of Foreman.

97.     Defendants received illicit financial gain as a result of their conspiracy.

98.     As a proximate result of Defendants' illicit agreement and conspiracy, Foreman has sustained damages in an amount greater than $75,000.00.

### FOURTH CAUSE OF ACTION
### (Negligence)

99.     Foreman restates and realleges paragraphs 1 through 98 as if fully set forth herein.

100.    The damages suffered by Foreman were caused solely by the negligence of Defendants, and each of them, as herein alleged, without any negligence on the part of Foreman.

101.    Said damages suffered by Foreman were a direct and proximate result of the negligence of Defendants, by virtue of the foregoing facts and circumstances, which individually and in combination, constitute negligence.

102.   As a result of the negligence of Defendants, as described above, Foreman has sustained damages in an amount greater than $75,000.00.

103.   Defendants' wrongful conduct was willful, wanton and/or malicious, grossly negligent, and without just cause or excuse.

104.   In addition to actual damages, an award of punitive damages is justified as provided by Okla. Stat. tit. 23, § 9.1 and should be entered against Defendants in order to punish Defendants for their conduct and to deter others from engaging in like conduct.

**FIFTH CAUSE OF ACTION**
**(Unjust Enrichment)**

105.   Foreman restates and realleges paragraphs 1 through 102 as if fully set forth herein.

106.   Foreman received no work arising from its $250 million Master Service Agreement.

107.   Instead, restoration and reconstruction work in Puerto Rico was wrongfully diverted to Cobra, which to date has been paid approximately $1.1 billion in FEMA funds, some of which, if not all, as a result of the corrupt relationship between Tribble and Defendants.

108.   Defendants received and accepted the benefit and enrichment of funds for work arising under RFP 77844 that they received, to the exclusion of Foreman, in exchange for the value they gave Tribble.

109.   Defendants have wrongfully and inequitably retained funds for work that they caused to be wrongfully diverted to them.

110.   To date, neither Mammoth nor Cobra has made any restitution to Foreman of the funds they wrongfully and inequitably retained.

111.    It is contrary to equity and good conscience that Defendants be permitted to retain these financial benefits at the expense of Foreman.

112.    Based on the unjust enrichment of Defendants, an equitable order or decree requiring restitution is necessary and sought, in at least the amount of the funds Defendants diverted from Foreman.

### SIXTH CAUSE OF ACTION
### (Constructive Trust)

113.    Foreman restates and realleges paragraphs 1 through 106 as if fully set forth herein.

114.    Upon information and belief, Defendants have acquired funds for work on the restoration and repair of Puerto Rico's electric grid that properly belonged to Foreman.  Such acquisition was wrongful as described herein.

115.    Defendants do not have any legitimate interest in the funds derived from work awarded to Foreman under the Foreman MSA.  Retention of the funds would constitute unjust enrichment.

116.    Foreman therefore seeks a constructive trust over the Defendants' funds that properly belong to Foreman, requiring the transfer of Defendants' interests in the funds to Foreman.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff Foreman Electric Services, Inc. requests that the Court enter judgment in its favor and against Defendants Mammoth Energy Services, Inc. and Cobra Acquisitions LLC, jointly and severally, for its damages, which exceed $75,000.00; for treble damages as provided in 18 USC § 1964(c); for punitive damages in an amount sufficient to punish Defendants for their conduct; for pre- and post-judgment interest to the extent

18

permitted by law; and for a reasonable attorney fee and costs of this action, together with any other relief this Court deems just and equitable.

Respectfully submitted,

DUNLAP BENNETT & LUDWIG

By: _____

David R. Keesling, OBA No. 17881
Destyn D. Stanton, OBA No. 31718
6660 South Sheridan Road, Suite 250
Tulsa, Oklahoma 74133
Telephone: (918) 998-9350
Facsimile: (918) 998-9360
dkeesling@dbllawyers.com
dstanton@dbllawyers.com

*Attorneys for Plaintiff*
*Foreman Electric Services, Inc.*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| UNITED STATES OF AMERICA, | **INDICTMENT** |
| v. | CRIMINAL NO. 19- 541 (FAB) |
| **[1] Ahsha Nateef Tribble,**<br>**(Counts One to Ten )** | CRIMINAL VIOLATIONS:<br>Count 1: 18 U.S.C. §§ 371, 201(b)(1)(A) and<br>(b)(2)(A) |
| **[2] Donald Keith Ellison,**<br>**(Counts One to Six, Eleven and Twelve )** | Counts 2 to 5: 18 U.S.C. §§ 1343, 1346<br>Count 6: 18 U.S.C. § 1040 |
| **[3] Jovanda R. Patterson a/k/a Jo a/k/a**<br>**Jojo,**<br>**(Counts Thirteen, Fourteen, Fifteen)** | Counts 7 to 10: 18 U.S.C. § 1952(a)(3)<br>Counts 11 to 12: 18 U.S.C. § 1001<br>Count 13: 18 U.S.C. § 208<br>Counts 14 to 15: 18 U.S.C. § 1343 |
| Defendants. | FORFEITURE ALLEGATIONS |

RECEIVED & FILED
CLERK'S OFFICE
SEP - 3 2019
US DISTRICT COURT
SAN JUAN, PR

**THE GRAND JURY CHARGES:**

Unless otherwise specified, at all times relevant to this Indictment:

## I.    GENERAL ALLEGATIONS

1.      Category 4 Hurricane Maria made landfall in Puerto Rico on September 20, 2017.

2.      On that same day, President Donald Trump issued a major disaster declaration for Puerto Rico because of the damage resulting from Hurricane Maria.  That declaration, issued pursuant to the Stafford Act, was designated as FEMA-4339-DR.



EXHIBIT

1

## DEFENDANTS

3.        At all times material to this Indictment and starting in or about October 2017, defendant **[1] Ahsha Nateef Tribble**, was a Federal Emergency Management Agency (FEMA), Region II, Deputy Regional Administrator, assigned to work in Puerto Rico as part of FEMA's response to Hurricane Maria.

4.        From in or about October 2017 to in or about September 2018, defendant **[1] Ahsha Nateef Tribble** was Sector Lead for Power and Infrastructure in Puerto Rico and part of the Office of the FEMA Federal Coordinating Officer in Puerto Rico as Recovery Office Deputy Director – Infrastructure Directorate/Disaster Recovery Manager.

5.        At all times material to this Indictment and starting in or about October 2017 to in or about June 2019, defendant **[2] Donald Keith Ellison** was President of Cobra Acquisitions, LLC.

6.        At all times material to this Indictment, and starting in or about October 2017 and up until March 2018, defendant **[3] Jovanda R. Patterson a/k/a Jo a/k/a Jojo**, was a FEMA Deputy Chief of Staff, assigned to San Juan, Puerto Rico. **[3] Jovanda R. Patterson a/k/a Jo a/k/a Jojo** resigned from her position with FEMA on or about July 2018.

## RELEVANT INDIVIDUALS, ENTITIES, AND PROGRAMS

### PREPA

7.        Hurricane Maria extensively damaged Puerto Rico's electric power system.

8.        At all times relevant to this Indictment, Puerto Rico Electric Power Authority ("PREPA") was an electric power company and the government-owned corporation of Puerto Rico

responsible for electricity generation, power distribution and power transmission on the island. PREPA was the sole provider of electricity for 1.5 million residential, commercial, and industrial clients in Puerto Rico.

9.        PREPA was created in 1941 as a public corporation and governmental instrumentality of Puerto Rico by Act No. 83 of May 2, 1941, as amended.  Pursuant to Act No. 83, among PREPA's powers were the capability to contract to acquire supplies and services.

10.        At the time when Hurricane Maria hit Puerto Rico, PREPA was in a deteriorated financial condition, and earlier that year, on July 2, 2017, a petition to adjust PREPA's substantial debts had been filed before the United States District Court for the District of Puerto Rico pursuant to Title 48, United States Code, Section 2164.

**COBRA**

11.        Cobra Acquisitions, LLC ("COBRA") was a limited liability company organized and existing under the laws of the State of Delaware.  It had a place of business in Oklahoma City, Oklahoma.

12.        COBRA was a wholly owned subsidiary of Mammoth Energy Services, Inc., with a place of business in Oklahoma City, Oklahoma.

13.        Cobra Energy LLC and Cobra Logistics Holdings, LLC are both affiliates of COBRA and wholly owned subsidiaries of Mammoth Energy Services, Inc.

**FEMA**

14.        Once the President declares that an emergency or major disaster exists, the Federal Emergency Management Agency ("FEMA") can provide assistance.  FEMA coordinates

the federal government's role in preparing for, preventing, mitigating the effects of, responding to, and recovering from all domestic disasters, whether natural or man-made, including acts of terror.

15.     Pursuant to Major Disaster Declaration FEMA-4339-DR, FEMA was authorized to provide Individual Assistance (IA), Public Assistance (PA) and Hazard Mitigation (HM) to Puerto Rico.

16.     FEMA assisted eligible individuals and households who sustained losses due to disasters through its IA programs.

17.     FEMA assisted State, Territorial, Indian Tribal, and local governments and certain types of private nonprofit organizations through its PA Program. Through the PA Program, FEMA provided supplemental Federal disaster grant assistance for debris removal, emergency protective measures, and the restoration of disaster-damaged, publicly owned facilities and the facilities of certain private nonprofit organizations. The PA Program also encouraged protection of these damaged facilities from future events by providing assistance for hazard mitigation measures.

18.     FEMA processed PA grant funding according to the type of work the applicant undertook. Eligible work had to be required as a result of the declared incident, be located in the designated area, be the legal responsibility of the applicant, and be undertaken at a reasonable cost. Eligible applicants included states, federally recognized tribal governments (including Alaska Native villages and organizations so long they were not privately owned), U.S. territories, local governments, and certain private non-profit (PNP) organizations. Puerto Rico was an eligible Applicant.

19.     FEMA Region II served the states of New Jersey and New York, the Commonwealth of Puerto Rico, the territory of the U.S. Virgin Islands and eight Tribal Nations.

## OFFICIAL ACTS OF AHSHA NATEEF TRIBBLE

20.     As Deputy Regional Administrator for FEMA, Region II, defendant [1] **Ahsha Nateef Tribble's** duties and responsibilities included but were not limited to, the following:

      a.  planning, directing, and coordinating all programs, projects, and activities in the region;

      b.  making day-to-day operational management decisions, with signatory authority on matters not requiring the Regional Administrator's review; and

      c.  providing oversight and support in disaster preparedness, response and recovery activities and disaster assistance in accordance with the Stafford Act, when emergency or major disaster is declared by the President, including damage assessment, mitigation assistance, and overall coordination of Federal, State, Local, tribal, private, and volunteer response efforts.

21.     From in or about October 2017 to in about September 2018, defendant [1] **Ahsha Nateef Tribble** was Sector Lead for Power and Infrastructure in Puerto Rico (Sector Lead) as part of FEMA's response to Hurricane Maria. She was also designated as Recovery Office Deputy Director – Infrastructure Directorate/Disaster Recovery Manager (Recovery Manager) in the Office of the FEMA Federal Coordinating Officer in Puerto Rico. Her official duties as Recovery Office Deputy Director – Infrastructure Directorate included, but were not limited to,

approval of requisition for supplies and services and approval of Public Assistance Project Worksheets up to $200,000,000.00.

22. As Deputy Regional Administrator, Sector Lead, and Recovery Manager, defendant [1] **Ahsha Nateef Tribble** was a "public official" within the definition of Title 18, United States Code. Section 201(a)(1), and as such, [1] **Ahsha Nateef Tribble** owed a fiduciary duty to both FEMA and the American public.

23. Public officials within the executive branch owe a fiduciary duty to the United States and its citizens to perform the duties and responsibilities of their offices free from deceit, fraud, concealment, bias, self-enrichment, and self-dealing.

24. As a FEMA employee, [1] **Ahsha Nateef Tribble** was aware of the general prohibition on that she could not, directly or indirectly solicit or accept a gift from a prohibited source; or solicit or accept a gift to be given because of her official position. 5 C.F.R. § 2635.202(a) and (b). A prohibited source means any person who is seeking official action by the employee's agency; does business or seeks to do business with the employee's agency; conducts activities regulated by the employee's agency; has interests that may be substantially affected by the performance or nonperformance of the employee's official duties; or is an organization a majority of whose members are described in paragraphs (d)(1) through (4) of 5 C.F.R. § 2635.203(d).

## COBRA CONTRACTS

### First COBRA Contract

25.      On or about October 19, 2017, PREPA, represented by its then Executive

Director, and COBRA, signed a contract identified as "Emergency Master Service Agreement for

PREPA's Electrical Grid Repairs – Hurricane Maria", (hereinafter referred to as the "First COBRA

Contract").   Cobra was represented by Individual A in the First COBRA Contract.

> a.  Article 1 of the First COBRA Contract required that COBRA provide labor, supervision, tools, equipment, and materials necessary to perform the storm restoration services at various locations in PREPA's service areas.
>
> b.  As compensation for services rendered under the contract, PREPA and COBRA agreed (Article 3) that the total amount to be paid under the contract would not exceed $200,000,000.00.
>
> c.  Article 3 also provided that PREPA would only pay for services rendered by the invoice date and would not be required to make advance payments for any future service to be rendered by COBRA.
>
> d.  Article 4.3 established that the contract would be in effect for a period of twelve months beginning on the date on which the contract was signed and COBRA received the deposit amount of $15,000,000.00, as set forth by Exhibit B of the First COBRA Contract.
>
> e.  Pursuant to Article 21 of the First COBRA Contract, COBRA had the continuous obligation to disclose to PREPA all information and circumstances of its relations with clients and third persons and any interest which could reasonable influence PREPA when executing the contract or during its term.   COBRA was to avoid even the appearance of the existence of conflicting interests.
>
> f.  In Article 29 of the First COBRA Contract, COBRA acknowledged that starting on October 25, 2017, FEMA financial assistance would be used to fund the contract.

26.      On or about  November 1, 2017, PREPA represented by its then Executive

Director, and COBRA, represented by Individual A, signed Amendment No. 1 to the First COBRA

contract, which amended Articles 59(a) and 68. Except as set forth in Amendment No. 1, the First COBRA Contract remained in full force and effect in accordance with its terms.

27.     On or about December 8, 2017, PREPA, represented by its then Executive Director, and COBRA, represented by Individual A, signed Amendment No. 2 to the First COBRA Contract, to add Article 71. Except as set forth in Amendment No. 2, the First COBRA Contract remained in full force and effect in accordance with its terms.

28.     On or about  December 21, 2017, PREPA represented by its then Executive Director, and COBRA, represented by Individual A, signed Amendment No. 3 to the First COBRA Contract, which further amended Article 59. Except as set forth in Amendment No. 3, the First COBRA Contract remained in full force and effect in accordance with its terms.

29.     On or about December 22, 2017, FEMA determined (in an Eligibility Determination Memorandum, Applicant, PA ID 000-UA2QU-00, FEMA-4339-DR-PR, Project Worksheet 00251) that the costs incurred by PREPA under the First COBRA Contract, up to $200,000,000.00, were reasonable. A Project Worksheet (PW) is the form FEMA uses to document the details of an Applicant's project, including location, damage description and dimensions, scope of work, and  costs incurred or expected.

30.     On or about  January 28, 2018, PREPA represented by its then Executive Director, and COBRA, represented by Individual A, signed Amendment No. 4 to the First COBRA Contract, which amended it in several respects, including but not limited to, amendments to Articles 3, 14 and 39, the addition of Articles 72 and 73, and the inclusion of other certifications required from COBRA. The amendment to Article 3 was to increase the total amount to be paid

Page **8** of **48**

under the contract, which after Amendment No. 4, could not exceed $445,429,800.00. COBRA also warranted in Amendment No. 4 that the scope of work as provided under the First COBRA Contract and its Amendments was performed consistent with all applicable FEMA laws, regulations, and eligibility guidelines and only included work eligible for FEMA reimbursement assistance. Except as set forth in Amendment No. 4, the First COBRA Contract remained in full force and effect in accordance with its terms.

31.     On or about  February 27, 2018, PREPA represented by its then Executive Director, and COBRA, represented by Individual A and defendant [2] **Donald Keith Ellison** as President, signed Amendment No. 5 to the First COBRA Contract, which amended it in several respects, including but not limited to, an amendment to Article 3. The amendment to Article 3 was to increase the total amount to be paid under the contract, which after Amendment No. 5, could not exceed $945,429,800.00. Except as set forth in Amendment No. 5, the First COBRA Contract remained in full force and effect in accordance with its terms.

**Second COBRA Contract**

32.     On or about March 26, 2018, PREPA, represented by its then Chief Executive Officer/Executive Director, and COBRA, represented by Individual A, signed a contract identified as Master Service Contract for PREPA's Electrical Grid Repairs Hurricane Maria, hereinafter referred to as Second COBRA Contract.

        a. Article 1 of the Second COBRA Contract required that COBRA provide labor, supervision, tools, equipment, and materials necessary to perform the hurricane restoration and reconstruction services at various locations in PREPA's service areas.

b. As compensation for services rendered under the contract, PREPA and COBRA agreed (Article 3) that the total amount to be paid under the contract could not exceed $900,000,000.00.

c. Article 3 also provided that PREPA would only pay for services rendered by the invoice date and would not be required to make advance payments for any future service to be rendered by COBRA.

d. Article 4.3 established that the contract would be in effect until May 25, 2019.

e. Pursuant to Article 21 of the Second COBRA Contract, COBRA had the continuous obligation to disclose to PREPA all information and circumstances of its relations with clients and third persons and any interest which could reasonably influence PREPA when executing the contract or during its term. COBRA was to avoid even the appearance of the existence of conflicting interests.

f. Article 53(N) of the Second COBRA Contract provided that PREPA was "using Federal grant funding awarded or administered by FEMA to the Government of Puerto Rico and/or PREPA to pay, in full, for the costs incurred under this Contract. As a condition of FEMA funding under major disaster declaration FEMA-4339-DR-PR, FEMA requires the Government of Puerto Rico and PREPA to provide various financial and performance reporting. The Contractor agrees to provide all information, documentation, and reports necessary to satisfy these reporting requirements. Failure by the Contractor to provide information necessary to satisfy these reporting requirements may result in loss of Federal funding for this Contract, and such failure shall be a material breach of this Contract."

## RFP-77844

33.     On or about February 16, 2018, PREPA announced a Request for Proposal (RFP) to obtain electric system restoration services. The closing date of the RFP was March 2, 2018. The RFP, identified as Request for Proposal 77844 Electric System Restoration Services, intended to procure services from one or more contractors for a term of one year. The purpose of the RFP was to contract qualified electric utility asset reconstruction companies to provide

restoration services for PREPA during the remaining period of Hurricane Maria' Electric System Restoration and Reconstruction period, and the 2018 hurricane season.

34.     Multiple companies submitted proposals in response to RFP-77844. On or about March 29, 2018, the Evaluation Committee designated by PREPA, recommended three of the companies submitting proposals as companies PREPA should consider contracting. COBRA was one of the three companies selected.

## COUNT ONE
### Conspiracy to Commit Bribery
### Title 18, United States Code, Section 371

35.     The allegations in Paragraphs 1 through 34 of this Indictment are hereby re-alleged and incorporated herein.

36.     From in or about October 2017 to in or about April 2019, within the District of Puerto Rico, and elsewhere within the jurisdiction of this Court,

**[1] Ahsha Nateef Tribble,**
**[2] Donald Keith Ellison,**

the defendants, and others known and unknown, willfully and knowingly combined, conspired, confederated, and agreed together and with each other to commit offenses against the United States, to wit, violations of Title 18, United States Code, Sections 201(b)(1)(A) and 201(b)(2)(A).

## OBJECTS OF THE CONSPIRACY

37.     It was a part and an object of the conspiracy that **[2] Donald Keith Ellison,** directly and indirectly, would and did corruptly give, offer, and promise a thing of value to a public official, namely **[1] Ahsha Nateef Tribble**, with intent to influence an official act, in violation of Title 18, United States Code, Section 201(b)(1)(A).

38.      It was further a part and an object of the conspiracy that **[1] Ahsha Nateef Tribble**, being a public official, directly and indirectly, would and did corruptly demand, seek, receive, accept, and agree to receive and accept a thing of value from **[2] Donald Keith Ellison**, in return for **[1] Ahsha Nateef Tribble** being influenced in the performance of any official act, in violation of Title 18, United States Code. Section 201(b)(2)(A).

39.      It was a purpose of the conspiracy for defendant **[2] Donald Keith Ellison** to give, offer, promise, and agree to give, offer, and promise things of value to **[1] Ahsha Nateef Tribble**, and for **[1] Ahsha Nateef Tribble** to demand, seek, receive, accept and agree to receive and accept items of value from defendant **[2] Donald Keith Ellison**, to influence **[1] Ahsha Nateef Tribble's** performance of official acts as a FEMA employee, particularly as Deputy Regional Administrator, Sector Lead, and Recovery Manager, in connection to COBRA's contracts with PREPA related to electric power grid restoration after Hurricane Maria.   In return, **[2] Donald Keith Ellison** would promise, offer and give **[1] Ahsha Nateef Tribble** a stream of things of value, including airfare, ground transportation, helicopter flights, hotel rooms, meals, entertainment expenses for **[1] Ahsha Nateef Tribble** and another individual at the suggestion and behest of **[1] Ahsha Nateef Tribble**, employment for an individual at the behest of **[1] Ahsha Nateef Tribble**, and personal security services for **[1] Ahsha Nateef Tribble**.

## MANNERS AND MEANS OF THE CONSPIRACY

The conspiracy was accomplished through the following manners and means:

40.     It was part of the conspiracy that **[1] Ahsha Nateef Tribble** solicited and obtained, both directly and indirectly, for personal gain, things of value from **[2] Donald Keith Ellison**.

41.     It was further part of the conspiracy that **[2] Donald Keith Ellison** directly or indirectly gave, offered, and promised things of value to **[1] Ahsha Nateef Tribble**.

42.     The things of value promised and given directly and indirectly to **[1] Ahsha Nateef Tribble** by **[2] Donald Keith Ellison** included the following:

   a.   A helicopter tour over Puerto Rico on or about February 7, 2018;

   b.   Assistance procuring a place to live in New York in or about February 2018;

   c.   The negotiation and hiring of **[3] Jovanda R. Patterson a/k/a Jo a/k/a Jojo** by Cobra Energy;

   d.   starting in or about March 2018 and culminating in July 2018;

   e.   Hotel accommodations in Fort Lauderdale, Florida on or about July 17 to July 18, 2018;

   f.   Airfare from Miami to Orlando for travel on or about July 20, 2018;

   g.   First class airfare from San Juan to New York for travel on or about September 22, 2018;

   h.   Personal security services in or about November to December 2018;

   i.   Roundtrip airfare from Washington DC to Charlotte for travel on or about November 29, 2018 to November 30, 2018;

   j.   Hotel accommodations in Charlotte on or about November 29-30, 2018;

k. Access to and the use of the credit card of **[2] Donald Keith Ellison**; and

l. Access to and the use of an apartment located in San Juan, Puerto Rico.

43.     It was further part of the conspiracy that **[1] Ahsha Nateef Tribble**, who in exchange for the receipt of things of value from **[2] Donald Keith Ellison**, performed official acts through her FEMA employment to advance COBRA's interests and secure favorable treatment for COBRA as needed and as specific opportunities arose in connection with the contracts signed between PREPA and COBRA, the payment of work billed under the contracts, and work assigned by PREPA to COBRA pursuant to those contracts.

44.     It was further part of the conspiracy that **[1] Ahsha Nateef Tribble**, in exchange for receiving things of value from **[2] Donald Keith Ellison**, performed official acts as needed and as specific opportunities arose on behalf of COBRA, including but not limited to, influencing, providing advice to, and exerting pressure on PREPA executives, including but not limited to the Chief Executive Officer, and Directors of different PREPA divisions, so that PREPA would accelerate payments to COBRA, assign tasks to COBRA instead using PREPA employees, and use COBRA in restoration tasks to the exclusion of other contractors.

45.     It was further part of the conspiracy that **[1] Ahsha Nateef Tribble**, in exchange for receiving things of value from **[2] Donald Keith Ellison**, performed official acts as needed and as specific opportunities arose on behalf of COBRA, including but not limited to, influencing, providing advice to, and exerting pressure on FEMA employees concerning FEMA procedures for the approval of FEMA reimbursement assistance for COBRA work under the First and Second COBRA Contracts with PREPA.

46.     It was further part of the conspiracy that as needed and as specific opportunities arose **[1] Ahsha Nateef Tribble** regularly provided **[2] Donald Keith Ellison** with information she obtained through her position as FEMA Deputy Regional Administrator, Sector Lead, and Recovery Manager, providing COBRA with information not readily accessible to it through other means.

47.     The official acts performed by **[1] Ahsha Nateef Tribble** in exchange for things of value from **[2] Donald Keith Ellison** included the following:

a.   On or about December 23, 2017, **[1] Ahsha Nateef Tribble** took official action to cause a letter to be sent from FEMA's Federal Coordinating Officer to the Puerto Rico Government's Authorized Representative informing that FEMA had determined the costs under the Cobra contract with PREPA to be reasonable.

b.   On or about February 11, 2018, **[1] Ahsha Nateef Tribble** directed, advised, and pressured PREPA executives to utilize Cobra personnel to repair damage to the Monacillos substation.

c.   From in or about March 2018 to November 2018, **[1] Ahsha Nateef Tribble** directed, advised, and exerted pressure on PREPA executives and FEMA officials to take action for Local Redevelopment Authority for Naval Station Roosevelt Roads ("LRA") to enter into an agreement with PREPA for Cobra to perform repair work at Roosevelt Roads.

d.   From in or about January 2018 to October 2018, **[1] Ahsha Nateef Tribble** directed, advised, and exerted pressure on PREPA executives to accept the

Page **15 of 48**

specifications of a COBRA design for the electric power distribution system in Vieques and to engage COBRA in the execution of the proposed redesign.

48.     It was further part of the conspiracy that to conceal their actions, **[1] Ahsha Nateef Tribble** frequently communicated and corresponded with **[2] Donald Keith Ellison** using her private email account, her private cellular number, a disposable prepaid cellular number, Apple iMessages, SMS texts, and photographs, rather than through her FEMA issued email account or FEMA issued cellular telephone.

49.     It was further part of the conspiracy that **[1] Ahsha Nateef Tribble** and **[2] Donald Keith Ellison** concealed and attempted to conceal **[1] Ahsha Nateef Tribble's** receipt and acceptance of things of value from **[2] Donald Keith Ellison** by paying with credit cards in the name of **[2] Donald Keith Ellison** in his personal capacity or as COBRA President.

## OVERT ACTS

In furtherance of the conspiracy, the following overt acts, among others, were committed:

50.     On December 8, 2017, **[2] Donald Keith Ellison**, through his work email address, at \*\*\*\*\*\*\*\*@mammothenergy.com, sent **[1] Ahsha Nateef Tribble** an email, through \*\*\*\*\*.\*\*\*\*\*\*\*@fema.dhs.gov, requesting a status of the legal review and asked her, *"Are you in a position as we spoke to go on the record?"*

51.     On December 8, 2017, **[1] Ahsha Nateef Tribble** responded to **[2] Donald Keith Ellison's** email,

> *"FEMA lawyers finished the review and sent questions back to PREPA yesterday and followed up with a phone call.....FEMA public assistance team is analyzing all*

Page 16 of 48

*the cost reasonableness information we have with our HQ.....I worked with the PR Governor yesterday on what we need from PREPA to process invoices and asked that PREPA communicate with you on their process. Obviously that did not happen. I am heading to PREPA at 9am. I will follow up."*

52.     On January 25, 2018, defendant **[1] Ahsha Nateef Tribble** sent an email from her personal account, through \*\*\*\*\*\*\*\*3@gmail.com, to **[2] Donald Keith Ellison's** work email address, at \*\*\*\*\*\*\*\*@mammothenergy.com, stating, *"Hey, Need to get this squared away. Can always change it. Also there are rooms at the Conrad (Battery Park) and the W. Hamilton? Let's talk today. AT*

|  | Jan 31<br>(You)<br>DL922/DL2418<br>SJU to LGA | (ME)<br>DL4755<br>DCA-LGA | Feb 2<br>(US)<br>DL485<br>JFK to SJU |
|---|---|---|---|
| (nonstop) | 8am-2:48pm | 2:00p – 3:25p | 8am – 1:05pm" |

53.     On or about February 7, 2018, **[2] Donald Keith Ellison** provided **[1] Ahsha Nateef Tribble** and another person associated with **[1] Ahsha Nateef Tribble** a helicopter tour of certain areas of Puerto Rico.

54.     On February 9, 2018, defendant **[1] Ahsha Nateef Tribble**, at \*\*\*\*\*.\*\*\*\*\*\*\*@fema.dhs.gov, received an email from a PREPA consultant, Individual B, with the subject line being "Submission: Cobra Contract Amendment No.5 Review Request", stating

*"I have attached the Amendment No. 5 to the Cobra contract for OCPC's review and comment. This amendment increases the contract ceiling to allow for Cobra's procurement of necessary materials in support of electric grid restoration and provides language guiding such material procurements. Additionally, the amendment provides a vehicle to rapidly expand restoration staffing under a PREPA contract in the event it becomes necessary to maintain required levels of*

*effort under the current restoration plan. Please review the included 20 attachments (numbered 00-19) as you consider this amendment, and please contact us at any time with questions or to request additional documentation as needed. We recognize that this amendment will require FOMB review, and we will begin preparation of materials in anticipation of that submission."*

55.    On February 9, 2018, **[1] Ahsha Nateef Tribble** forwarded the above referenced email, through \*\*\*\*\*.\*\*\*\*\*\*\*@fema.dhs.gov to her personal email address, at \*\*\*\*\*\*\*\*3@gmail.com. On February 9, 2018, defendant **[1] Ahsha Nateef Tribble** forwarded the email, through \*\*\*\*\*\*\*\*3@gmail.com to **[2] Donald Keith Ellison**, at \*\*\*\*\*\*\*\*@mammothenergy.com.

56.    On February 11, 2018, defendant **[1] Ahsha Nateef Tribble** sent an email, through \*\*\*\*\*\*\*\*3@gmail.com, to **[2] Donald Keith Ellison**, at \*\*\*\*\*\*\*\*\*5@gmail.com, and among the topics covered was her request for assistance in procuring a place to live in New York and prioritizing her needs as to location, safety, and furnishings. On February 14, 2018, **[2] Donald Keith Ellison** responded, *"Yes ma'am, I got it and have somebody on it already."*

57.    On February 11, 2018, an explosion occurred at the PREPA Monacillos transmissions center. That explosion left several municipalities without electric power. Despite the representations of PREPA executives that PREPA could repair the damages at the Monacillos transmissions center and that the costs associated with using COBRA would be much higher than using PREPA personnel, defendant **[1] Ahsha Nateef Tribble** insisted and pressured PREPA executives to give the task to COBRA.  COBRA invoiced PREPA under the First COBRA Contract and PREPA paid for the work done at the Monacillos transmissions center on or about February 12, 13, and 14, 2018, approximately $613,909.29.

58.    On   February   23,   2018,   [2]   Donald   Keith   Ellison,   through *********5@gmail.com, forwarded an email with the subject line *"NYC Apartment/Broker Introduction"* to [1] Ahsha Nateef Tribble's personal email, at ********3@gmail.com, and stated, *"Please reach out to Jay about your needs."*

59.    On   March   20,   2018,   [1]   Ahsha   Nateef   Tribble,   through *****.*******@fema.dhs.gov,   forwarded   an   email   to   [2]   Donald   Keith   Ellison,   at ********@mammothenergy.com, containing two attachments, *"Vieques Update 17 Mar 18.pdf"* and *"Vieques Update 17 Mar 18 OUO Section.pdf."* Defendant [1] Ahsha Nateef Tribble stated the following in the email, *"From the UCG discussion today."*

60.    On March 22, 2018, [1] Ahsha Nateef Tribble sent an email, through ********3@gmail.com   to   [2]   Donald   Keith   Ellison's   personal   email,   at *********5@gmail.com, stating [1] Ahsha Nateef Tribble desire to take care of 3] Jovanda R. Patterson a/k/a Jo a/k/a Jojo, inquiring about [2] Donald Keith Ellison's intent toward defendant [3] Jovanda R. Patterson a/k/a Jo a/k/a Jojo, and [1] Ahsha Nateef Tribble's concerns that [3] Jovanda R. Patterson a/k/a Jo a/k/a Jojo's salary was inadequate for a move to New York.  [2] Donald Keith Ellison responded to [1] Ahsha Nateef Tribble and stated,

> *"I ran into JoJo last night at Ben & Jerry's.  I asked her directly if she was serious.  She said yes, I told her to get with Michelle to start the paperwork.  I was dead serious and sincere when I said I would take care of her.  She will be our rotation coordinator located here in PR to start with."*

61.    On March 24, 2018, [1] Ahsha Nateef Tribble sent an email, through ********3@gmail.com with the subject line *"Connecting you by gmail"* to [3] Jovanda R.

Patterson a/k/a Jo a/k/a Jojo, at **************n@gmail.com, and [2] **Donald Keith Ellison**, at *********5@gmail.com stating, "*Jo – Per our convo. Sent from my iPhone.*"

62.    On March 24, 2018, [3] **Jovanda R. Patterson a/k/a Jo a/k/a Jojo**, through **************n@gmail.com, sent an email to [2] **Donald Keith Ellison**, at *********5@gmail.com, stating, "*Hey Sir, I wanted to reach out to get information before I text Michelle. I know your busy so I truly hate to bother you.*"

63.    On March 28, 2018, [1] **Ahsha Nateef Tribble** sent an email to a FEMA official advising of her scheme to use a PREPA memorandum of understanding to provide repair services to an area known as Roosevelt Roads.

64.    On March 30, 2018, [2] **Donald Keith Ellison** sent an email, through *********5@gmail.com, to [1] **Ahsha Nateef Tribble**, at ********3@gmail.com, with a Microsoft Word Document attached termed "*PR Electrical Grid –Standardization Modernization and Hardening of Infrastructure (Draft in Process).*"  On March 30, 2018, [1] **Ahsha Nateef Tribble** responded, "*This is fantastic. Thank you. I have some comments in the attached just for clarification. Then I want to push a little more on the pros/cons of a COOP model. I will write it and share it for comment. Will you be in early enough to meet the FEMA Administrator (your fellow southerner) on Thursday?*"  Attached to the email was a Microsoft Word Document titled "*PR Electrical Grid –Standardization Modernization and Hardening of Infrastructure (Draft in Process)_AT*".

65.     On or about April 4, 2018, **[1] Ahsha Nateef Tribble** documented that she proposed a redesign of the Vieques distribution system to FEMA and PREPA officials with more standardized voltages, more resilient poles and new wire.

66.     On April 7, 2018, **[1] Ahsha Nateef Tribble** and **[2] Donald Keith Ellison** received personal emails at ********3@gmail.com and *********5@gmail.com, from **[3] Jovanda R. Patterson a/k/a Jo a/k/a Jojo**'s personal email account, **********i@gmail.com, stating, *"Thank you both for everything!!! My day will be great when I get a picture of Ahsha getting her treatment today please. J Patterson."* On April 7, 2018, **[2] Donald Keith Ellison** responded to the group, *"I'm on it. I will get her down there at 1pm."*

67.     On April 8, 2018, **[1] Ahsha Nateef Tribble**, through ********3@gmail.com, forwarded an email communication sent to Individual C, to **[2] Donald Keith Ellison**, at ********@mammothenergy.com **[1] Ahsha Nateef Tribble's** original email to Individual C stated, *"This is a draft but you can see where we are going."* The email had a Microsoft Word Document attached titled, *"PR Electrical Grid – Standardization Modernization and Hardening of Infr..."*

68.     On April 8, 2018, **[1] Ahsha Nateef Tribble**, using *****.*******@fema.dhs.gov, sent an email to several persons including **[2] Donald Keith Ellison**, at ********@mammothenergy.com, stating:

> *After several conversations over the last few days, I need have a meeting with this group regarding Vieques. There is a lot happening around us and we need to be in sync on moving forward. We have an opportunity to do what is right for the citizens of Vieques and PR and instill confidence in our future reconstruction effort. I would like this group to meet as soon as possible. There is a hearing in DC on April 11 and on Friday there is a local hearing in Vieques both on PREPA. I really want to*

*settle on a path forward with this team or clearly define the roadblocks.*
*Please let me know if Monday at 5:00pm works.*

69.    On    April    10,    2018,    **[1]    Ahsha    Nateef    Tribble,**    using
\*\*\*\*\*.\*\*\*\*\*\*\*@fema.dhs.gov,    sent    an    email    to    **[2]    Donald    Keith    Ellison,**    at
\*\*\*\*\*\*\*\*@mammothenergy.com forwarding an email she received on March 27, 2018, with

Facts Sheets for the restoration of Vieques and Culebra.  One of the documents referenced in the

forwarded e-mail was listed as "Official Use Only" and was not meant to be shared with the public.

70.    On    April    15,    2018,    **[1]    Ahsha    Nateef    Tribble**    sent    an    email    from
\*\*\*\*\*\*\*\*3@gmail.com to **[2] Donald Keith Ellison,** at \*\*\*\*\*\*\*\*\*5@gmail.com, referencing

several matters to be undertaken and ending with the following request: *"...please keep me posted*

*on any movement on RFP.  If nothing by Tuesday I will start pushing amendment."*

71.    On    April    16,    2018,    **[2]    Donald    Keith    Ellison**    sent    an    email,    through
\*\*\*\*\*\*\*\*@mammothenergy.com, to **[1] Ahsha Nateef Tribble's** personal email account,
\*\*\*\*\*\*\*\*3@gmail.com,    concerning    the    Puerto    Rico    Electrical    Grid    Standardization,

Modernization, and Hardening. **[2] Donald Keith Ellison** stated in the email, *"I am about to send*

*an email to AEP and Oncor asking the questions and tying you into the conversation. If that's ok?"*

72.    On    April    21,    2018,    **[2]    Donald    Keith    Ellison,**    through
\*\*\*\*\*\*\*\*@mammothenergy.com, sent defendant **[1] Ahsha Nateef Tribble** an email at
\*\*\*\*\*.\*\*\*\*\*\*\*@fema.dhs.gov, with a FEMA Project Worksheet balance Microsoft Excel

workbook attached and stated, *"Check out the tab labeled amendment 6.  It is a big number if we*

*want to fund the additional labor and cover the material for Vieques and culebra. $500mm."*  On

April 21, 2018, **[1] Ahsha Nateef Tribble** responded to **[2] Donald Keith,** *"I have it but I need a*

*burn rate vs number of people. And we need to decide if the 110T/200D is the right mix. Also, if we have to break out Vieques and Culebra what is it?"*

73.     On May 21, 2018, **[1] Ahsha Nateef Tribble**, through ********3@gmail.com, sent an email to **[2] Donald Keith Ellison** at *********5@gmail.com, stating, *"Since we don't have a plan, do you want to fly to Miami tomorrow morning at 0630 for the day? The return is at 5:55p per your suggestion."*

74.     On June 1, 2018, Individual E, COBRA Director of Human Resources and Administration emailed **[3] Jovanda R. Patterson a/k/a Jo a/k/a Jojo**, at **************n@gmail.com, an *"Offer Letter"* which tendered a job offer in Business Development for Cobra Logistics and the compensation attached to the offer.  The Offer of Employment letter attached to the electronic message outlined **[3] Jovanda R. Patterson a/k/a Jo a/k/a Jojo**'s annual salary as $160,000.00 with bonus opportunity up to 30% of her annual salary, plus per diem bringing her potential compensation to $274,000.  As of January 7, 2018, **[3] Jovanda R. Patterson a/k/a Jo a/k/a Jojo**'s annual FEMA salary was less than $100,000.00.

75.     On June 2, 2018, **[1] Ahsha Nateef Tribble**, through ********3@gmail.com, sent an email to **[2] Donald Keith Ellison**, at *********5@gmail.com stating, *"What else needs to happen besides my draft below.  See Jim's email below that.  Here are the things that need to happen:  1)get further along in engineering with certification from a PR engineer.  That is underway by TRC and Cobra.??  2)get the PW funded (3-4 weeks).  3)cobra to order materials (need approval from PREPA).  4)Cobra needs a work release from PREPA.  5) you should see a larger presence on the island by....."*

76.     On June 3, 2018, **[1] Ahsha Nateef Tribble** forwarded a chain of emails between her and a PREPA consultant regarding monies PREPA owed COBRA, through *****.*******@fema.dhs.gov to her personal email address, at ********3@gmail.com. The subject on the email was *"$200M behind in payment to Cobra – stop work looming again"*. On June 3, 2018, **[1] Ahsha Nateef Tribble** forwarded that email chain, through ********3@gmail.com to **[2] Donald Keith Ellison**, at *********5@gmail.com.

77.     On June 8, 2018, **[1] Ahsha Nateef Tribble**, through ********3@gmail.com, sent an email to **[2] Donald Keith Ellison**, at *********5@gmail.com stating, *"Just in case you wanted to know: Monday: I land at noon, have one meeting and then will meet you at your hotel at or before 3:00pm. After dinner I will go to the airport to catch my 10:00pm flight to NY. Tuesday: (in NY for day). I land in DC at 6:45pm. I will come find you for a bit then got to my hotel. Weds: 0800 flight to SJU Is this good with you?"* On June 9, 2018, **[2] Donald Keith Ellison** responded, *"This is very good! Enjoy your day with your mom. Ignore your phone and relax!"*

78.     On or about June 15, 2018, **[1] Ahsha Nateef Tribble** instructed, advised, and pressured PREPA personnel to utilize an independent consultant's findings to establish voltage levels for a work plan being developed for Vieques rather than PREPA's own assessment.

79.     On July 13, 2018, defendant **[1] Ahsha Nateef Tribble** flew from Luis Munoz Marin International Airport ("SJU") located in San Juan, Puerto Rico to Orlando International Airport ("MCO") located in Orlando, FL.

80.     On July 17, 2018, **[2] Donald Keith Ellison** flew from Panama City Beach, FL ("ECP") to MCO and picked up a rental car from Hertz Rental Cars upon arrival with a drop off location of Miami International Airport ("MIA"). On July 17, 2018, defendant **[1] Ahsha Nateef Tribble** utilized Uber to travel to MCO. On July 17, 2018, **[2] Donald Keith Ellison** checked into the Conrad Ft. Lauderdale hotel ("CONRAD") located in Fort Lauderdale, FL.

81.     On July 18, 2018, defendant **[1] Ahsha Nateef Tribble** made a debit card purchase at the CONRAD. On July 18, 2018, **[2] Donald Keith Ellison** purchased an American Airlines one-way ticket for defendant **[1] Ahsha Nateef Tribble** from MIA to MCO. The credit card used to purchase the ticket was **[2] Donald Keith Ellison**'s Capital One Quicksilver MasterCard #XXXX XXXX XXXX 5189.

82.     On July 19, 2018, **[2] Donald Keith Ellison** checked out of the CONRAD and on the same day defendant **[1] Ahsha Nateef Tribble** checked into the JW Marriot Marquis located in Miami, FL.

83.     On July 20, 2018, **[2] Donald Keith Ellison** returned the Hertz Rental Car to MIA. **[2] Donald Keith Ellison** boarded Delta flight 1987 from MIA to Atlanta, GA. **[1] Ahsha Nateef Tribble** boarded the American Airlines Flight 1362 from MIA to MCO, which **[2] Donald Keith Ellison** purchased.

84.     On July 22, 2018, **[1] Ahsha Nateef Tribble** forwarded an email, through ********3@gmail.com, to **[2] Donald Keith Ellison**, at *********5@gmail.com, regarding the reconstruction project on Vieques and stated, "*Sending again. Jim is trying to help. Need to make*

Page 25 of 48

*that relationship in Vieques. Environmental will be our biggest issue. Also there is another opportunity for the hearing. Need a quick call on this.*"

85.     On or about August 8, 2018, **[1] Ahsha Nateef Tribble** emailed a FEMA official and instructed the official to provide necessary data for COBRA to perform repair work at Roosevelt Roads.

86.     On or about August 12, 2018 and August 13, 2018, **[1] Ahsha Nateef Tribble** emailed a FEMA official and instructed the official that PREPA had no authority in the obligation amount associated with repair work at Roosevelt Roads because the amount was established between FEMA and LRA.

87.     On or about August 20, 2018, **[1] Ahsha Nateef Tribble** received a text message from a FEMA employee under her supervision. The text stated *"Hey Boss. Meeting at RR with all players. Agreement on scope with 1 sub station. Concern: Cobra is saying $9mil. RFP came in at $2.8 and $6mil. How do we proceed"*?. That same date **[1] Ahsha Nateef Tribble** sent **[2] Donald Keith Ellison** the following text message: *"Please help me on this. From my employee: Hey Boss. Meeting at RR with all players. Agreement on scope with 1 sub station. Concern: Cobra is saying $9mil. RFP came in at $2.8 and $6mil. How do we proceed"*?

88.     On September 8, 2018, **[2] Donald Keith Ellison** purchased $3,000 in casino chips at the Casino Del Mar, Puerto Rico. Surveillance footage from the Casino on September 8, 2018 showed **[1] Ahsha Nateef Tribble** and **[2] Donald Keith Ellison** in the casino together at the cash cage as well as the gambling tables.

89.     On or about November 8, 2018, [1] **Ahsha Nateef Tribble** emailed a FEMA official and instructed that assistance be provided to COBRA to invoice for repair work performed at Roosevelt Roads.

90.     On   September   14,   2018,   [1]   **Ahsha   Nateef   Tribble,**   at \*\*\*\*\*.\*\*\*\*\*\*\*@fema.dhs.gov, received an email from a PREPA official titled Meeting Notes – Call with FEMA and PREPA RE: Vieques Distribution Permanent Work.  The email stated the topics discussed during the call included whether PREPA wanted to use COBRA for the project on   Vieques.     On   September   14,   2018,   [1]   **Ahsha   Nateef   Tribble,**   through \*\*\*\*\*.\*\*\*\*\*\*\*@fema.dhs.gov,   forwarded   the   email   to   her   personal   email   account,   at \*\*\*\*\*\*\*\*3@gmail.com.   [1] **Ahsha   Nateef   Tribble** then   forwarded   the   email,   through \*\*\*\*\*\*\*\*3@gmail.com   to   [2]   **Donald   Keith   Ellison's**   personal   email,   at \*\*\*\*\*\*\*\*\*5@gmail.com.

91.     On or about November or December of 2018, [2] **Donald Keith Ellison** made arrangements to provide [1] **Ahsha Nateef Tribble** with personal security services that [2] **Donald Keith Ellison** paid for.

92.     During the duration of the conspiracy, [2] **Donald Keith Ellison** and [1] **Ahsha Nateef Tribble** exchanged multiple text messages, [1] **Ahsha Nateef Tribble,** including but not limited to messages sent to and from [1] **Ahsha Nateef Tribble's** telephone number ending in 5384 such as the following:



Screenshot of iMessage Message #1:



**[1] Ahsha Nateef Tribble**

**[1] Ahsha Nateef Tribble**

**[2] Donald Keith Ellison**

**[1] Ahsha Nateef Tribble**

**[2] Donald Keith Ellison**

Screenshot of iMessage Message #2:



Screenshot of iMessage Message #3:

93.      On December 24, 2018, **[1] Ahsha Nateef Tribble** and **[2] Donald Keith Ellison** exchanged Apple iMessages in relation to **[1] Ahsha Nateef Tribble** using his credit card for travel expenses.



94.     [1] **Ahsha Nateef Tribble's** iCloud Photo Library contained a photograph of the front and back of [2] **Donald Keith Ellison's** personal credit card.

95.     [2] **Donald Keith Ellison's** iCloud Photo Library contained a photograph of Company B's Request for Proposal, Contractor's Rate Schedule. The Contractor's Rate Schedule included reference to PREPA and RFP 77844.   Company B submitted a proposal in response to RFP-77844 and was a competitor to COBRA.

All in violation of Title 18, United States Code, Section 371.

### COUNTS TWO through FIVE
### Honest Services Wire Fraud
### Title 18, United States Code, Sections 1343 and 1346

96.     The General Allegations and the allegations contained in Count One of this Indictment are re-alleged and incorporated herein by reference.

97.     From in or about October 2017 to in or about April 2019, within the District of Puerto Rico, and elsewhere within the jurisdiction of this Court, defendants

**[1] Ahsha Nateef Tribble,**
**[2] Donald Keith Ellison,**

and others known and unknown to the Grand Jury did knowingly and willfully devise and intend

to devise a scheme and artifice to defraud and deprive the United States and the citizens of Puerto

Rico, through bribery, of the honest services of **[1] Ahsha Nateef Tribble,** a public official, in

violation of Title 18, United States Code, Sections 1343, and 1346.

## PURPOSES OF THE SCHEME

The purposes of the scheme included, but were not limited to, the following:

98.    For **[1] Ahsha Nateef Tribble** to enrich herself by soliciting and accepting

bribes in exchange for using her official position as a FEMA, Region II, Deputy Regional

Administrator, Sector Lead, and Recovery Manager to benefit **[2] Donald Keith Ellison,** President

of COBRA, by influencing, advising, and pressuring PREPA executives, Company A employees,

and FEMA employees so as to advance COBRA's interests and secure favorable treatment for

COBRA in connection with the contracts signed between PREPA and COBRA, the payment of

work billed under the contracts, and work assigned by PREPA to COBRA pursuant to those

contracts.

99.    For **[2] Donald Keith Ellison** to enrich himself and COBRA by paying bribes

to **[1] Ahsha Nateef Tribble,** in exchange for the use of her authority as a FEMA, Region II,

Deputy Regional Administrator, Sector Lead, and Recovery Manager.

## MANNERS AND MEANS

The manners and means by which the Defendants and others carried out the scheme

included, but were not limited to, the following:

Page 32 of 48

100.     **[1] Ahsha Nateef Tribble** solicited and obtained, both directly and indirectly, for personal gain, things of value from **[2] Donald Keith Ellison**, including airfare, ground transportation, helicopter flights, hotel rooms, meals, entertainment expenses for **[1] Ahsha Nateef Tribble** and another individual at the suggestion and behest of **[1] Ahsha Nateef Tribble**, employment for an individual at the behest of [1] Ahsha Nateef Tribble, and personal security services for **[1] Ahsha Nateef Tribble**.

101.     **[2] Donald Keith Ellison** directly or indirectly gave, offered, and promised things of value to **[1] Ahsha Nateef Tribble**.

102.     **[1] Ahsha Nateef Tribble** used and agreed to use her official authority as a FEMA, Region II, Deputy Regional Administrator, Sector Lead, and Recovery Manager, to:

    a. influence, provide advice to, and exert pressure on PREPA executives, including but not limited to the Chief Executive Officer, and Directors of different PREPA divisions, so that PREPA would accelerate payments to COBRA, assign tasks to COBRA instead using PREPA employees to complete said tasks, and use COBRA in restoration tasks to the exclusion of any other contractor;

    b. influence, provide advice to, and exert pressure on employees of a PREPA consultant company (hereinafter referred to as Company A), knowing and intending that such advocacy, advice, and pressure would be the basis for the advocacy, advice, and pressure Company A employees would in turn exert upon PREPA executives, so that PREPA would accelerate payments to COBRA.

    c. influence, provide advice to, and exert pressure on FEMA employees concerning FEMA procedures for the approval of FEMA reimbursement assistance for COBRA work under the First and Second COBRA Contracts with PREPA.

    d. provide [2] **Donald Keith Ellison** with information obtained through her position as a public official and which would not have been readily accessible to COBRA otherwise.

103.    [1] **Ahsha Nateef Tribble** and [2] **Donald Keith Ellison** concealed and attempted to conceal [1] **Ahsha Nateef Tribble's** receipt and acceptance of bribes from [2] **Donald Keith Ellison** by paying with credit cards in the name of [2] **Donald Keith Ellison** in his personal capacity or as COBRA President.

104.    [1] **Ahsha Nateef Tribble** and [2] **Donald Keith Ellison** concealed and attempted to conceal their actions by communicating through private email accounts, [1] **Ahsha Nateef Tribble's** private cellular number, a prepaid disposable cellular number, Apple iMessages, SMS texts, and photographs, rather than through [1] **Ahsha Nateef Tribble's** FEMA issued email account or FEMA issued cellular telephone.

## ACTS IN FURTHERANCE OF THE SCHEME

105.    In furtherance of the scheme to defraud, and to accomplish its purposes, [1] **Ahsha Nateef Tribble, [2] Donald Keith Ellison,** and others known and unknown to the Grand Jury committed in the District of Puerto Rico and elsewhere the acts set forth in Paragraphs 51 to 95 of this Indictment, which are realleged as through fully set forth herein.

## EXECUTION OF THE SCHEME

Page 34 of 48

106.   The General Allegations and the allegations contained in Count One of this Indictment are re-alleged and incorporated herein by reference.

107.   On or about the dates listed below, in the District of Puerto Rico and elsewhere, the defendants [1] **Ahsha Nateef Tribble**, [2] **Donald Keith Ellison**, and others known and unknown to the Grand Jury, for the purpose of executing the above-described scheme and artifice to defraud and deprive, transmitted and caused to be transmitted by means of wire communications in interstate commerce, certain writings and signals, as more specifically described below:

| COUNT | DATE | WIRES |
|---|---|---|
| 2 | February 9, 2018 | [1] **Ahsha Nateef Tribble**, forwarded an email she received at her FEMA email address *****.*******@fema.dhs.gov to her personal email address, at ********3@gmail.com.   Defendant [1] Ahsha Nateef Tribble forwarded the email, through ********3@gmail.com to [2] **Donald Keith Ellison**, at ********@mammothenergy.com. The email was sent by a PREPA consultant, Individual B, titled Submission: Cobra Contract Amendment No.5 Review Request. |
| 3 | June 3, 2018 | [1] **Ahsha Nateef Tribble** forwarded a chain of emails between her and a PREPA consultant regarding monies PREPA owed COBRA, through *****.*******@fema.dhs.gov to her personal email address, at ********3@gmail.com.  The subject on the email was "$200M behind in payment to Cobra – stop work looming again".  [1] **Ahsha Nateef Tribble** then forwarded that email chain, through ********3@gmail.com to [2] **Donald Keith Ellison**, at *********5@gmail.com. |
| 4 | July 22, 2018 | [1] **Ahsha Nateef Tribble** forwarded an email, through ********3@gmail.com, to [2] **Donald Keith Ellison**, at *********5@gmail.com, regarding the reconstruction project on Vieques and stated, "*Sending again.  Jim is trying to help.  Need to make that relationship in Vieques.  Environmental will be our biggest* |

| COUNT | DATE | WIRES |
|-------|------|-------|
|  |  | *issue. Also there is another opportunity for the hearing. Need a quick call on this."* |
| 5 | September 14, 2018 | On [1] **Ahsha Nateef Tribble**, at *****.*******@fema.dhs.gov, received an email from a PREPA official titled Meeting Notes – Call with FEMA and PREPA RE: Vieques Distribution Permanent Work. The email stated the topics discussed during the call included whether PREPA wanted to use COBRA for the project on Vieques. On September 14, 2018, [1] **Ahsha Nateef Tribble**, through *****.*******@fema.dhs.gov, forwarded the email to her personal email account, at ********3@gmail.com. [1] **Ahsha Nateef Tribble** then forwarded the email, through ********3@gmail.com to [2] **Donald Keith Ellison's** personal email, at *********5@gmail.com. |

All in violation of Title 18, United States Code, Sections 1343 and 1346.

**COUNT SIX**
**DISASTER FRAUD**
**Title 18, United States Code, Sections 1040 and 2**

108.    The General Allegations and the allegations contained in Count One of this

Indictment are re-alleged and incorporated herein by reference.

109.    From in or about October 2017 to in or about April 2019, within the District of

Puerto Rico, and elsewhere within the jurisdiction of this Court, defendants

[1] **Ahsha Nateef Tribble,**
[2] **Donald Keith Ellison,**

Page 36 of 48

aiding and abetting each other, did knowingly conceal, and cover up a material fact, that is, the receipt and acceptance by public official **[1] Ahsha Nateef Tribble** of things of value offered, and given by **[2] Donald Keith Ellison**, by means of a trick, scheme, and device, to wit:

## THE SCHEME TO DEFRAUD

110. **[1] Ahsha Nateef Tribble** and **[2] Donald Keith Ellison** concealed and attempted to conceal from PREPA, and FEMA, **[1] Ahsha Nateef Tribble's** receipt and acceptance of things of value from **[2] Donald Keith Ellison.** The defendants knew that the said fact was material insofar as:

a. pursuant to Article 21 of the First COBRA Contract and the Second COBRA Contract, COBRA had the continuous obligation to disclose to PREPA all information and circumstances of its relations with clients and third persons and any interest which could reasonable influence PREPA when executing the contract or during its term, and

b. as a FEMA employee, **[1] Ahsha Nateef Tribble** was subject to the general prohibition on that she could not, directly or indirectly solicit or accept a gift from a prohibited source; or solicit or accept a gift to be given because of her official position. 5 C.F.R. § 2635.202(a) and (b).

111. Said scheme occurred in a matter involving a benefit, to wit: the FEMA reimbursement of monies pursuant to the Public Assistance Program for work paid or to be paid by PREPA under the First COBRA and Second COBRA Contracts for the restoration of the electric power grid, that was authorized, transported, transmitted, transferred, disbursed, and paid

Page 37 of 48

in connection with FEMA-4339-DR, a major disaster declaration for Puerto Rico under the authority of the Stafford Act, due to damage caused on September 20, 2017 and continuing thereafter, resulting from Hurricane Maria.

## MANNER AND MEANS OF THE SCHEME TO DEFRAUD

It was part of the scheme to defraud that:

112.       Defendant **[2] Donald Keith Ellison** gave, offered, promised, and agreed to give, offer, and promise things of value to **[1] Ahsha Nateef Tribble**, and **[1] Ahsha Nateef Tribble** demanded, sought, received, accepted, and agreed to receive and accept things of value from defendant **[2] Donald Keith Ellison**, to influence **[1] Ahsha Nateef Tribble's** performance of official acts as a FEMA Deputy Regional Administrator, Sector Lead, and Recovery Manager, in connection to COBRA's contracts with PREPA related to electric power grid restoration after Hurricane Maria.

113.       In return, **[2] Donald Keith Ellison** would promise, offer and give **[1] Ahsha Nateef Tribble** a stream of things of value, including airfare, ground transportation, helicopter flights, hotel rooms, meals, entertainment expenses for **[1] Ahsha Nateef Tribble** and another individual at the suggestion and behest of **[1] Ahsha Nateef Tribble**, employment for an individual at the behest of **[1] Ahsha Nateef Tribble**, and personal security services for **[1] Ahsha Nateef Tribble**.

114.       To conceal their actions, **[1] Ahsha Nateef Tribble** frequently communicated and corresponded with **[2] Donald Keith Ellison** using private email accounts, her private cellular

number, a prepaid disposable cellular number, Apple iMessages, SMS texts, and photographs, rather than through her FEMA issued email account or FEMA issued cellular telephone.

115.    **[1] Ahsha Nateef Tribble** and **[2] Donald Keith Ellison** concealed and attempted to conceal **[1] Ahsha Nateef Tribble's** receipt and acceptance of things of value from **[2] Donald Keith Ellison** by paying with credit cards in the name of **[2] Donald Keith Ellison** in his personal capacity or as COBRA President.

## ACTS IN FURTHERANCE OF THE SCHEME

116.    In furtherance of the scheme to defraud, and to accomplish its purposes, **[1] Ahsha Nateef Tribble, [2] Donald Keith Ellison**, and others known and unknown to the Grand Jury committed in the District of Puerto Rico and elsewhere the acts set forth in Paragraphs 51 to 95 of this Indictment, which are realleged as through fully set forth herein.

All in violation of Title 18, United States Code, Sections 1040 and 2.

## COUNTS SEVEN TO TEN
### Travel Act
### Title 18, United States Code, Section 1952(a)(3)

117.    The General Allegations and the allegations contained in Counts One, Two, Three, Four, and Five of this Indictment are re-alleged and incorporated herein by reference.

118.    Within the District of Puerto Rico, and elsewhere within the jurisdiction of this Court, defendant

### [1] Ahsha Nateef Tribble

on the dates set forth below, did willfully and knowingly use and cause to be used a facility in interstate and foreign commerce, namely a wire and electronic communication, with the intent to

Page 39 of 48

promote, manage, establish, carry on, and facilitate the promotion, management, establishment, and carrying on of an unlawful activity, namely bribery contrary to Title 18, United States Code, Section 201(b)(2)(A), and thereafter performed and attempted to perform an act to promote, manage, establish and carry on, and to facilitate the promotion management, establishment, and carrying on of the above unlawful activity.  All in violation of Title 18, United States Code, Section 1952(a)(3).

| COUNT | DATE | WIRES |
|---|---|---|
| 7 | February 9, 2018 | **[1] Ahsha Nateef Tribble**, forwarded an email she received at her FEMA email address *****.*******@fema.dhs.gov to her personal email address, at ********3@gmail.com.  Defendant **[1] Ahsha Nateef Tribble** forwarded the email, through ********3@gmail.com to **[2] Donald Keith Ellison**, at ******** @mammothenergy.com.  The email was sent by a PREPA consultant, Individual B, titled Submission: Cobra Contract Amendment No.5 Review Request. |
| 8 | June 3, 2018 | **[1] Ahsha Nateef Tribble** forwarded a chain of emails between her and a PREPA consultant regarding monies PREPA owed COBRA, through *****.*******@fema.dhs.gov to her personal email address, at ********3@gmail.com.  The subject on the email was "$200M behind in payment to Cobra – stop work looming again".  **[1] Ahsha Nateef Tribble** then forwarded that email chain, through ********3@gmail.com to **[2] Donald Keith Ellison**, at *********5@gmail.com. |
| 9 | July 22, 2018 | **[1] Ahsha Nateef Tribble** forwarded an email, through ********3@gmail.com, to **[2] Donald Keith Ellison**, at *********5@gmail.com, regarding the reconstruction project on Vieques and stated, *"Sending again.  Jim is trying to help.  Need to make that relationship in Vieques.  Environmental will be our biggest issue.  Also there is another opportunity for the hearing.  Need a quick call on this."* |

| COUNT | DATE | WIRES |
|-------|------|-------|
| 10 | September 14, 2018 | On **[1] Ahsha Nateef Tribble**, at *****.*******@fema.dhs.gov, received an email from a PREPA official titled Meeting Notes – Call with FEMA and PREPA RE: Vieques Distribution Permanent Work. The email stated the topics discussed during the call included whether PREPA wanted to use COBRA for the project on Vieques. On September 14, 2018, **[1] Ahsha Nateef Tribble**, through *****.*******@fema.dhs.gov, forwarded the email to her personal email account, at ********3@gmail.com.   **[1] Ahsha Nateef Tribble** then forwarded the email, through ********3@gmail.com to **[2] Donald Keith Ellison's** personal email, at *********5@gmail.com. |

## COUNT ELEVEN
### FALSE STATEMENT
### Title 18, United States Code, Section 1001(a)(2)

119.         On or about March 15, 2019, within the District of Puerto Rico, and elsewhere within the jurisdiction of this Court, defendant

### [2] Donald Keith Ellison,

did willfully and knowingly make a materially false, fictitious, and fraudulent statement and representation in a matter within the jurisdiction of the executive branch of the Government of the United States, by stating to federal law enforcement agents of the Federal Bureau of Investigation and Department of Homeland Security, Office of Inspector General, during an interview in LaGrange, Georgia regarding activities occurring in and related to the District of Puerto Rico that **[2] Donald Keith Ellison** had no personal relationship with **[1] Ahsha Nateef Tribble** and was only around **[1] Ahsha Nateef Tribble** in relation to business. The statement and representation

Page 41 of 48

was false because, as **[2] Donald Keith Ellison** then and there knew, **[2] Donald Keith Ellison** had a personal relationship with **[1] Ahsha Nateef Tribble** and was with **[1] Ahsha Nateef Tribble** during personal activities including travel, hotel stays, meals, and family activities.   All in violation of Title 18, United States Code. Section 1001(a)(2).

## COUNT TWELVE
### FALSE STATEMENT
### Title 18, United States Code, Section 1001(a)(2)

120.      On or about March 15, 2019, within the District of Puerto Rico, and elsewhere within the jurisdiction of this Court, defendant

### [2] Donald Keith Ellison,

did willfully and knowingly make a materially false, fictitious, and fraudulent statement and representation in a matter within the jurisdiction of the executive branch of the Government of the United States, by stating to federal law enforcement agents of the Federal Bureau of Investigation and Department of Homeland Security Office of Inspector General during an interview in LaGrange, Georgia regarding activities occurring in and related to the District of Puerto Rico that **[2] Donald Keith Ellison** had not taken a helicopter trip with **[1] Ahsha Nateef Tribble**. The statement and representation was false because, as **[2] Donald Keith Ellison** then and there knew, **[2] Donald Keith Ellison** had taken a helicopter trip with **[1] Ahsha Nateef Tribble** on or about February 7, 2018. All in violation of Title 18, United States Code, Section 1001(a)(2).

## COUNT THIRTEEN
### Acts affecting personal financial conflicts of interest

## Title 18, <u>United States Code</u>, Section 208

121.     On or about May 8, 2018, within the District of Puerto Rico, and elsewhere within the jurisdiction of this Court, defendant

### [3] Jovanda R. Patterson a/k/a Jo a/k/a Jojo,

being a FEMA employee assigned to FEMA restoration efforts in Puerto Rico for the major disaster declaration FEMA-4339-DR, participated personally and substantially as a Government employee through decision, approval, recommendation, the rendering of advise, and otherwise in a proceeding in which she knew COBRA and its affiliates Cobra Energy LLC and Cobra Logistics Holding LLC had a financial interest and that at that time she was negotiating and had an arrangement concerning prospective employment with COBRA and its affiliates, to wit, she received through her FEMA email and completed a customer Past Performance Evaluation for Cobra Logistics that was part of a vendor bid process. All in violation of Title 18, <u>United States Code</u>, Section 208(a).

### COUNTS FOURTEEN TO FIFTEEN
#### Wire Fraud
#### Title 18, <u>United States Code</u>, Section <u>1343</u>

### SCHEME AND ARTICE TO DEFRAUD

122.     From in or about March 2018 through July 2018, in the District of Puerto Rico and within the jurisdiction of this Court,

### [3] Jovanda R. Patterson a/k/a Jo a/k/a Jojo,

the defendant herein, devised and intended to devise a scheme to defraud Mammoth Energy Services, Inc. and its wholly owned subsidiaries Cobra Energy LLC and Cobra Logistics Holdings, LLC, and to obtain money and property by means of materially false and fraudulent pretenses, representations and promises.

## MANNER AND MEANS

123.　It was part of the scheme and artifice to defraud that [3] **Jovanda R. Patterson a/k/a Jo a/k/a Jojo** communicated with employees of Cobra Energy LLC via interstate wire regarding potential employment with Mammoth Energy Services, Inc. and its wholly owned subsidiaries.

124.　It was part of the scheme and artifice to defraud that [3] **Jovanda R. Patterson a/k/a Jo a/k/a Jojo** provided materially false information and misrepresentations regarding her then-current FEMA salary via telephone to an employee of Cobra Energy LLC.

125.　It was part of the scheme and artifice to defraud that [3] **Jovanda R. Patterson a/k/a Jo a/k/a Jojo** misrepresented that her FEMA salary was calculated based on the Office of Personnel Management's General Schedule ("GS") Pay Table at GS 14 Step 10 when in fact it was GS 12 Step 4.

126.　It was part of the scheme and artifice to defraud that [3] **Jovanda R. Patterson a/k/a Jo a/k/a Jojo** materially misrepresented her FEMA salary to be higher than it actually was.

127.　It was part of the scheme and artifice to defraud that the true and accurate FEMA salary of [3] **Jovanda R. Patterson a/k/a Jo a/k/a Jojo**, was concealed and withheld from

employees of Mammoth Energy Services, Inc., Cobra Energy LLC, and Cobra Logistics Holdings, LLC.

128.     It was part of the scheme and artifice to defraud that an inflated and false FEMA salary was utilized to induce Mammoth Energy Services, Inc. and its wholly owned subsidiaries to make a salary offer at a competitive and comparative level.

129.     It was part of the scheme and artifice to defraud that email communications via interstate wire were utilized to communicate regarding the salary to be offered to [3] **Jovanda R. Patterson a/k/a Jo a/k/a Jojo.**

130.     It was part of the scheme and artifice to defraud that [3] **Jovanda R. Patterson a/k/a Jo a/k/a Jojo** received an offer via email on or about June 1, 2018 to serve in the position of Business Development for Cobra Logistics with a starting salary of $160,000 plus 30% bonus.

131.     It was part of the scheme and artifice to defraud that [3] **Jovanda R. Patterson a/k/a Jo a/k/a Jojo** accepted the offer via email on or about June 5, 2018.

132.     It was part of the scheme and artifice to defraud that [3] **Jovanda R. Patterson a/k/a Jo a/k/a Jojo** began working for Cobra Energy in or about July 2018.

133.     On or about each of the dates set forth below, in the District of Puerto Rico,

**[3] Jovanda R. Patterson a/k/a Jo a/k/a Jojo,**

the defendant herein, for the purpose of executing the scheme described above, and attempting to do so, caused to be transmitted by means of wire communication in interstate commerce the signals and sounds described below for each count, each transmission constituting a separate count:

Page 45 of 48

| Count | Description | Date |
|-------|-------------|------|
| 14. | Email to          n@gmail.com from Cobra Energy with Subject: "Cobra Offer Letter" containing attached offer letter | June 1, 2018 |
| 15. | Email from          n@gmail to Cobra Energy with subject: "Offer Letter" containing attached signed letter | June 5, 2018 |

All in violation of Title 18, United States Code, Section 1343.

## FORFEITURE ALLEGATIONS
### Title 18 United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c).

1.      The allegations contained in Counts One, Two, Three, Four, and Five of this Indictment are hereby realleged and incorporated by reference for the purpose of alleging forfeitures pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c).

2.      Pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c), upon conviction of a conspiracy to violate Title 18, United States Code, Sections 201, 371, 1343, 1346, the defendants, **[1] Ahsha Nateef Tribble** and **[2] Donald Keith Ellison**, shall forfeit to the United States of America any property, real or personal, which constitutes or is derived from proceeds traceable to said violations.  The property to be forfeited includes, but is not limited to, the following: a

    a.    **$1,000,000.00** contained in Charles Schwab & Co., Inc. account #    **8933**, in the name of Donald Keith ELLISON, seized on April 26, 2019;

    b.    **$3,425,512.93** contained in Charles Schwab & Co., Inc. account #    **8933**, in the name of Donald Keith ELLISON, seized on June 18, 2019;

c.    One (1) **Myco Boat Trailer Vin #1M9BA4031JB817150**;

d.    One (1) **Caterpillar Model D5K2LGP Tractor, Serial Number KYY01200**;

e.    One (1) **Caterpillar Model 320EL Hydraulic Excavator, Serial Number WBK02864**;

f.    **$71,551.40** contained in checking account number `6700 at JP Morgan Chase, account is in the name of Donald Keith Ellison;

g.    **$276,583.84** contained in savings account number `9077 at JP Morgan Chase, account is in the name of Donald Keith Ellison;

h.    **$100,306.70** contained in savings account number `2591 at JP Morgan Chase, account is in the name of Keith Ellison and Jakyln F. Garrett;

i.    One (1) **2018 Invincible 40-foot catamaran Hull #IVBC0035B818**;

j.    One (1) **2018 Ford F-150 "XL" crew cab pickup truck, VIN #1FTEW1E50JFB847873**.

If any of the property described above, as a result of any act or omission of the defendants:

a.    cannot be located upon the exercise of due diligence;

b.    has been transferred or sold to, or deposited with, a third party;

c.    has been placed beyond the jurisdiction of the court;

d.    has been substantially diminished in value; or

e.    has been commingled with other property which cannot be divided without difficulty,

Page 47 of 48

the United States of America shall be entitled to forfeiture of substitute property pursuant to Title

21, United States Code, Section 853(p), as incorporated by Title 28, United States Code, Section

2461(c).


ROSA E. RODRIGUEZ VELEZ
UNITED STATES ATTORNEY

TRUE BILL


Myriam Y. Fernandez-Gonzalez
Assistant U.S. Attorney
Chief, Criminal Division

FOREPERSON
Dated:   2-3-2019


Seth Erbe
Assistant U.S. Attorney


Page **48** of **48**